**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

MARY JILL ALLGEYER                              Case No. 1:16-cv-1128

       Plaintiff,                              Barrett, J.
                                                Bowman, M.J.
   v.

CITY OF CINCINNATI, et al.,

       Defendants.

**REPORT AND RECOMMENDATION**

Plaintiff, proceeding *pro se* and *in forma pauperis*, filed a complaint against the City of Cincinnati and two individuals, Harry Black and Georgette Kelly. Pursuant to local practice, this case has been referred to the undersigned magistrate judge. *See generally* 28 U.S.C. § 636(b). Following the close of discovery in this case, the Defendant City moved for summary judgment. For the reasons that follow, the undersigned recommends that the Defendant's motion be GRANTED, and that this case be closed.

## I.    Procedural Background

In a complaint filed on December 6, 2016, Plaintiff alleged that during her long employment with the City, she was subjected both to reverse race discrimination in violation of Title VII of the Civil Rights Act of 1964, and to age discrimination. The complaint further alleged that she faced termination, was denied promotion, and experienced unequal terms and conditions of her employment. She alleged a course of continuing discrimination.

Defendants responded to Plaintiffs' complaint with a motion seeking judgment on the pleadings. In a Report and Recommendation adopted over Plaintiff's objections as the opinion of the Court, the Court granted in part and denied in part the Defendants' motion, which the Court construed as a preliminary motion for summary judgment.[1] In granting the Defendants' construed motion, the Court dismissed all claims as time-barred except for certain "failure to promote" claims alleging "race and/or age discrimination for the … applications for promotion that Plaintiff submitted after November 27, 2015." (Doc. 14 at 13; id. at 16).[2] The Court also dismissed all claims against the two individual Defendants. (*Id.* at 15-16). The Court subsequently amended its calendar order and directed the parties to complete discovery by November 30, 2018, with any additional dispositive motions to be filed on January 4, 2019. (Doc. 20).

The sole remaining Defendant, the City of Cincinnati, timely moved for summary judgment on Plaintiff's remaining failure to promote claims. (Doc. 23). Plaintiff filed a response in opposition, (Doc. 27), to which Defendant filed a reply. (Doc. 28). Without seeking leave of Court, Plaintiff filed a second memorandum in opposition to Defendant's motion for summary judgment.[3] (Doc. 29). To the extent that any reviewing court would find the construed sur-reply worthy of consideration, it does not alter the conclusion that the City is entitled to judgment as a matter of law.

---

[1] No discovery had been conducted in the case at the time, but the motion was construed under Rule 56 because both parties had attached documents outside the scope of the pleadings.

[2] Although the first motion for judgment identified a total of five applications, (*see* Doc. 12-1 at 46-50), Defendant's current motion addresses additional applications identified during discovery in this case.

[3] The undersigned recommends excluding consideration of Plaintiff's second memorandum in opposition to Defendant's motion as untimely and procedurally improper. In addition, some of the 34 pages of exhibits attached to the memorandum are duplicates of those submitted with Plaintiff's first response. Consistent with the earlier response, many exhibits pre-date the claims at issue.

## II.    Standard of Review

In a motion for summary judgment, a court must view "the facts and any inferences that can be drawn from those facts…in the light most favorable to the nonmoving party." *Keweenaw Bay Indian Comm. v. Rising*, 477 F.3d 881, 886 (6th Cir. 2007) (internal quotation marks and citation omitted). "Summary judgment is only appropriate 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" *Id.* (quoting Fed.R.Civ.P. 56(c)). "Weighing of the evidence or making credibility determinations are prohibited at summary judgment - rather, all facts must be viewed in the light most favorable to the non-moving party." *Id.*

The requirement that facts be construed in the light most favorable to the Plaintiff, however, does not mean that the court must find a factual dispute where record evidence contradicts Plaintiff's unsupported allegations.  If a moving party has carried its initial burden of showing that no genuine issues of material fact remain in dispute, the burden shifts to the non-moving party to present specific facts demonstrating a genuine issue for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986). "The 'mere possibility' of a factual dispute is not enough." *Mitchell v. Toledo Hosp.*, 964 F.2d 577, 582 (6th Cir. 1992) (citing *Gregg v. Allen-Bradley Co.*, 801 F.2d 859, 863 (6th Cir. 1986)).  In order to defeat the motion for summary judgment, the non-moving party must present probative evidence that supports its complaint. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50 (1986).  Although reasonable inferences must be drawn in favor of the opposing party, *see Matsushita*, 475 U.S. at 587, inferences are not to be

drawn out of thin air. To demonstrate a genuine issue, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts.... Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Id.*, 475 U.S. at 586-587 (citation omitted).

To the extent that the Defendant has shown that Plaintiff lacks evidence on an essential element of any of her claims, the burden shifts to Plaintiff to set forth "specific facts showing that there is a genuine issue for trial." *Id.*, at 587. At this point, Plaintiff may not rely solely on her subjective beliefs or opinions. *Arendale v. City of Memphis*, 519 F.3d 587, 601 (6th Cir. 2008). She may not show only that some hypothetical doubt exists as to the facts. *See Matsushita*, 475 U.S. at 586. "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Copeland v. Machulis*, 57 F.3d 476, 479 (6th Cir. 1995). Based on the relevant standards, the Defendant is entitled to judgment as a matter of law on all claims.

### III. Undisputed Facts

Plaintiff is a Caucasian female born in 1951 who first worked for the City from 1990 until 1993. While the reasons for her 1993 departure are disputed, that dispute is not material to the issues presented in this case. (*See, e.g.*, Doc. 25-1, Plaintiff's Deposition Ex. A, at 21). The parties agree that Plaintiff was later re-hired by the City and worked from October 1, 2000 until her retirement on August 1, 2018. (Doc. 25, Depo. at 24, 39).

When she was rehired, Plaintiff began working in the City Manager's Office as a Clerk Typist I. She was subsequently promoted to Clerk Typist II. In 2002, Plaintiff transferred to work as a Clerk Typist II in the Police Chief's Office. In 2004, she took a

civil service exam for promotion to a Clerk Typist III position, and was selected for that position in the Department of Transportation and Engineering ("DOTE"). In 2007, Plaintiff was promoted to the position of Administrative Technician ("Admin Tech") after taking a civil service exam and qualifying for an eligibility list. She continued to work as an Admin Tech in DOTE until her retirement.

The Admin Tech position falls within an administrative class series of positions. Most employees are promoted sequentially within the hierarchy of the administrative class series, from Admin Tech to Admin Specialist, to Senior Admin Specialist, to Supervising Management Analyst, with the top rung of the series being Division Manager. (Doc. 25 at 57). Between November 27, 2015 and her retirement, Plaintiff applied for at least 14, and possibly as many as 24, promotional opportunities. (Doc. 25 at 45 and Doc. 25-2, Ex. B, identifying 14 positions for which Plaintiff applied during the relevant time frame; *see also* Doc. 25-3, Ex. C, identifying HR responses to 24 applications received after November 27, 2015).

Some of the positions for which Plaintiff applied were Admin Specialist positions, which was one position higher in the administrative class series. However, other positions sought by Plaintiff were several steps above her Admin Tech position. Five or six applications were rejected or failed based upon Plaintiff's failure to meet minimum qualifications/eligible classification. (Doc. 25-2, *see also* Doc. 25 at 167-68, testifying about rejection listed on Doc. 25-3 for failure to meet time and grade and required classification requirements).

Some (but not all) of the Admin Specialist positions for which Plaintiff applied were positions that were filled from an eligibility list. The list was based upon an Admin

Specialist test for which Plaintiff initially submitted her application on September 10, 2015, prior to the limitations cut-off date established in this case. However, the administration of the test was delayed until April 1, 2016, a time frame within the limitations period. (Doc. 25 at 55, 58). Plaintiff took the test, which included an oral interview. On June 16, 2016, Plaintiff learned that she had placed only 46th out of 63 applicants who completed the test. Plaintiff remained on the list until it expired in July 2017, but was never certified or selected for an Admin Specialist position.

In addition to the applications that she submitted, Plaintiff asserts she "should have been able to compete" for additional jobs in other departments that were filled by the Civil Service Commission using promotion without exam, working out of class, and appointments to classified service. (Doc. 25 at 184 and Doc. 25-4, Ex. D). However, Plaintiff expressed interest in only one of those positions, a Senior Administrative Specialist (P) position awarded to Lorryn Bruns in July 2016. (Doc. 25 at 184 and Doc. 25-5, Ex. E).

IV.    **Analysis**

A. **Applicable Legal Standards**

Title VII prohibits discrimination in employment "because of such individual's race." 42 U.S.C. § 2000e-2(a)(1), while the Age Discrimination in Employment Act ("ADEA") prohibits discrimination "because of such individual's age." 29 U.S.C. § 623(a). At the outset, the undersigned notes that Plaintiff does not claim, and expressly denied in deposition testimony, that anyone in authority directly proclaimed or expressed race-based or age-based bias against her during her employment. (Doc. 3; *see also* Doc. 25 at 228). "Direct evidence of discrimination is evidence of conduct or statements by

6

persons involved in making the employment decision directly manifesting a discriminatory attitude, of a sufficient quantum and gravity that would allow the factfinder to conclude that attitude more likely than not was the but-for cause of the employment decision." *Scott v. Potter*, 182 Fed. Appx. 521, 525-26 (6th Cir. 2006) (internal quotation marks and citations omitted). "[O]nly the most blatant remarks, whose intent could be nothing other than to discriminate … satisfy this criteria." *Id.* at 536. Moreover, isolated or ambiguous remarks generally are not sufficient to prove a "direct evidence" claim. *Peters v. Lincoln Elec. Co.*, 285 F.3d 456, 478 (6th Cir. 2002).

Since Plaintiff relies exclusively upon circumstantial evidence rather than on direct evidence, her case is governed by the familiar *McDonnell Douglas* burden-shifting framework that applies to most employment discrimination claims. *See McDonnell Douglas v. Green*, 411 U.S. 792, 802, 93 S. Ct. 1817 (1973). As the plaintiff, Ms. Allgeyer has the burden of establishing a prima facie case of employment discrimination.

> To establish a prima facie case of reverse-race discrimination under… federal law, a plaintiff must prove the following elements:
>
> 1. Background circumstances to support the suspicion that the defendant is that unusual employer who discriminates against the majority;
>
> 2. [She] was qualified for his job;
>
> 3. [She] suffered an adverse employment decision; and
>
> 4. [She] was treated differently than similarly situated employees of a different race.

*Fletcher v. U.S. Renal Care, Inc.*, 240 F.Supp.3d 740, 748 (S.D. Ohio, 2017) (citing *Nelson v. Ball Corp.*, 656 Fed. Appx. 131, 134-135 (6th Cir. 2016) (internal quotations and citations omitted)). The Sixth Circuit has held that the same burden-shifting

framework applies to Plaintiff's claim of age-based discrimination. *See Geiger v. Tower Auto*, 579 F.3d 614, 620 (6th Cir. 2009).

Only if Plaintiff establishes her prima facie case does the burden shift to the City to articulate a legitimate, non-discriminatory reason for the employment action taken. If the Defendant succeeds in articulating a legitimate non-discriminatory reason for the failure to promote Plaintiff, then the burden shifts once more to Plaintiff to show that the City's proffered reasons for its failure to promote her were pretextual. *See, e.g., Jackson v. United Dairy Farmers*, 554 F. Supp.2d 813, 815 (S.D. Ohio 2008) (explaining burden-shifting standard, internal citations omitted).

Defendant does not dispute that Plaintiff is within a protected age classification, and is Caucasian. Defendant also does not dispute that Plaintiff suffered an adverse employment action when she was not promoted to various positions to which she applied, and one additional position (filled by Lorryn Bruns) in which she had expressed interest but was precluded from applying. (Doc. 23 at 8). However, the City persuasively argues that it is entitled to judgment as a matter of law based upon Plaintiff's failure to prove other elements of her prima facie case. Specifically, Plaintiff has failed to come forward with evidence that any other "similarly situated" employees (outside of Plaintiff's protected class) received promotions for which Plaintiff herself was qualified, and for which Plaintiff had submitted applications or expressed interest.

### B. Plaintiff's Opposition to Summary Judgment

Plaintiff filed a 98-page response to the City's motion, consisting of a 9-page memorandum, and 89 pages of exhibits. **In her memorandum, Plaintiff concedes that**

**she has no evidence that any similarly situated individuals outside of Plaintiff's protected class received more favorable treatment.**

> [Counsel for Defendant] states that I (Plaintiff) "have no genuine issues of material fact. When confronted with a record of her applications and asked to review her own documentary evidence, Plaintiff was unable to provide basic information about the positions for which she had applied including the departments, job responsibilities, and minimum qualifications for the position. More importantly, Plaintiff was unable to identify the similarly situated individuals outside of her protected class who received more favorable treatment." [Counsel] would be correct on all counts.

(Doc. 27 at 2, emphasis added). Plaintiff complains that she was unable to "decipher who received promotions from my applications" because "I do not have a photographic memory and I could not respond to his questions at the deposition in November." (*Id.*)

Plaintiff's response demonstrates a fundamental misunderstanding of the burden of proof required to prove her claims or to defeat summary judgment. As stated, under *McDonnell Douglas*, Plaintiff has the burden to make a prima facie showing on the essential elements of her claim. Plaintiff's concession that she cannot do so provides grounds for granting Defendant's motion. A closer review of Plaintiff's arguments and of the record in this case only adds to the conclusion that the Defendant is entitled to judgment as a matter of law.

The 89 pages of exhibits appended to Plaintiff's response are largely unauthenticated, poorly organized, and only briefly referenced (if at all) in her memorandum in opposition. This Court is not required to search the entire record to look for specific material facts that could support Plaintiff's claim. *Guarino v. Brookfield Twnshp. Trs.*, 980 F.2d 399, 404 (6th Cir. 1992). Instead, it is Plaintiff's burden to "present affirmative evidence to defeat a properly supported motion for summary judgment." *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479 (6th Cir. 1989). While not required to

do so in light of Plaintiff's failure to provide specific references, the undersigned has endeavored to review all exhibits in order to confirm the absence of any genuine issue of material fact that would preclude judgment from being granted to the Defendant City in this case.

Many of the exhibits contain improper annotations and/or argument. (*See* Doc. 27 at 8, "I have marked most of my exhibits with yellow [highlighter] and included statements."). Roughly half of the exhibits are comprised of copies of what appear to be undated civil service rules or policies,[4] or documents that predate the claims at issue.[5] Plaintiff argues that all of her exhibits reflect decades-long discrimination against her. However, this Court has dismissed all claims and defendants other than claims concerning applications for promotion submitted after November 27, 2015. In the absence of any showing of relevance to the limited claims at issue, the undersigned declines to consider exhibits that appear relevant only to previously dismissed claims.

After discovery closed, Plaintiff states that she contacted "Central H.R." and obtained additional records through a public information request. Although Plaintiff offers no citation to any record, she asserts that records show a total of 46 employees were placed in the position of Admin Specialist between the years of 2015 and 2018.[6]

---

[4] *See, e.g.*, Doc. 25 at 229, describing exhibit described as an "Institutional Racism Ordinance" enacted by the City, which Plaintiff testified was "just for minorities" and said "nothing anywhere about white female women." *See also* Doc. 25-1 at 26-28, undated "Motion" to eliminate institutional racism signed by six City Council members.

[5] Much of Plaintiff's response similarly focuses on complaints about applications for promotion or other events prior to November 27, 2015. (*See, e.g.*, Doc. 27 at 4, citing Ex. B-2 and copies of a 2004 grievance and subsequent reclassification and promotion of another employee in 2006 as an alleged example of discrimination).

[6] As Defendant points out, this assertion is one of many assertions or new allegations made by Plaintiff in her response in opposition to Defendant's motion without record support. (*See* Doc. 28 at 3-4).

Plaintiff's reliance on 46 potential promotional opportunities is misplaced. Based upon the defined limitations period, only applications submitted after November 27, 2015 are relevant. Positions for which Plaintiff submitted no application and expressed no interest are irrelevant.[7] Finally, despite some ambiguity in Plaintiff's own records as to whether she submitted 14 or 24 applications, she claimed (at most) to have submitted 24 applications during the relevant time period. That number is calculated by reference to a list that Plaintiff compiled of responses allegedly received from HR to various applications. (*See* Doc. 25-3, Ex. C). Only 24 of the responses post-date November 27, 2015.[8]

Plaintiff's response in opposition to the pending motion emphasizes longstanding disputes with her employer and her sense of being unfairly treated. She repeatedly stresses that she obtained her bachelor's degree and complains of "new HR policies" that eliminated a degree requirement for many positions. (*See* Doc. 27 at 11, concerning applicant data for job postings; Doc. 27 at 5, arguing that her "degree, years of excellent performance reviews, [and] experience…should have paved the way" for promotion; *see also id.*, referring to "15 years of student loans and going to college every night and on weekends for …five years while working full time"). Plaintiff asserts that she persevered to obtain an on-line bachelor's degree in 2010 from the University of Phoenix in Business/Public Administration. (*See* Doc. 27 at 25). She complains that others were promoted while she remained "blocked" despite that degree. (Doc. 27 at 2).

---

[7] Plaintiff produced to Defendant a list of agenda items that she represented were printouts reflecting promotions of eight individuals. (Doc. 25 at 211-212, Doc. 25-4). However, Plaintiff was unable to identify any of the positions as positions for which she applied, but was rejected based on age or race, and/or in which a candidate of a different race and/or younger age was treated more favorably because of their age or race. (*Id.* at 213-224).

[8] Although this Court previously defined the limitations period by reference to the date when Plaintiff submitted her applications, the exhibit does not include Plaintiff's application date.

On the whole, Plaintiff's response evinces sincere beliefs that she has been subjected to years of race and age-related discrimination and unfairly treated due in part to evolving H.R. practices and policies. However, Plaintiff's subjective beliefs as to the reasons for her non-promotion are insufficient to overcome the Defendant's otherwise unrefuted evidence in favor of summary judgment. Notably, Plaintiff cannot identify the age or race of the successful applicants for the vast majority of the promotions she sought.

Even if Plaintiff had come forward with the race and/or age of the candidates who were ultimately selected for promotions over her, the fact that a younger candidate or a person of a different race may have been selected is not sufficient absent a showing that Plaintiff herself was similarly situated to the successful candidate. *See Upshaw v. Ford Motor Co.*, 576 F.3d 576, 585 (6th Cir. 2009) (to establish a prima facie case, plaintiff must prove not only that she is a member of a protected class and that she was qualified, but also that she was considered for and denied the promotion and that "other employees of similar qualification who were not members of the protected class received promotions"). "[T]he plaintiff must produce evidence that the relevant other employees are 'similarly situated in all respects.'" *Hollins v. Atlantic Co.*, Inc., 188 F.3d 652, 659 (6th Cir. 1999) (quoting *Mitchell*, 964 F.2d at 583). A plaintiff's failure to point to evidence concerning the similarities in position, responsibilities, job function, or level of performance, and reliance on her own conclusory statements about differential treatment, is insufficient to defeat summary judgment on this element. *Hykes v. Geithner*, 2014 WL 4656373 at *6 (W.D. Tenn. Sept. 15, 2014); *accord Darby v. U.S. Dept of Energy*, 2006 WL 7348136 at *6 (6th Cir. 2006) (African-American plaintiff failed to show that white employees who were allegedly given numerous promotions were similarly-situated).

Pointing to alleged "discrimination" dating to the early 1990's, which claims this Court previously dismissed, Plaintiff expresses her belief that "it is probable in retrospect that racial discrimination began long ago with the H.R. Director, who was African American." (Doc. 27 at 3). She speculates: "Nothing else makes sense." (*Id.*) However, speculation and conjecture are insufficient as a matter of law to prove Plaintiff's case. As this Court recently explained in another case:

> Plaintiff cannot prove that she was the most qualified applicant merely "by relying on her subjective evaluation and comparison of her qualifications" to the selected applicant. *See Hedrick v. Western Reserve Case Sys.*, 355 F.3d 444, 462 (6th Cir. 2004) (Plaintiff's "subjective view of her qualifications in relation to those of other applicants, without more, cannot sustain a claim of discrimination."); *see also Sudduth v. Geithner*, 2012 WL 1132748 at *3 (S.D. Ohio April 4, 2012) (granting summary judgment on race discrimination claim) (additional citations omitted).

*Newbill v. Secretary, Department of Treasury*, 2018 WL 5251847, at *6 (Oct. 22, 2018), adopted at 2018 WL 5982929 (S. D. Ohio Nov. 13, 2018).

Finally, much of Plaintiff's response focuses on perceived inequities in evolving HR policies that she fails to connect to her claims, despite inexplicably asserting illegal discrimination arose from those new policies. For example, she argues that City anti-discrimination policies and practices have led the City "to omit best practices used in successful private businesses which has left City employees vulnerable to discrimination." (Doc. 27 at 6). She asserts (without citation to evidence) that "I have experienced repeated discriminating treatment due to the impact from seemingly neutral implemented policies and practices that have had a disproportionately negative impact on my career, both financially and emotionally and continue to experienced discrimination with every paycheck I receive." (Doc. 27 at 6). She complains that many were hired or promoted from "outside" of the civil service system and through "unclassified or exceptional

appointments with new classification requirements," and that many promoted employees lacked college degrees. (Doc. 27 at 2; *see also id.* at 7, arguing that "Administrative Promotions are going to civil servants through unclassified means, exceptional appointments, working out of class and new hires [leading] to HR discrimination of me as a Civil Servant to promotional opportunity. My race and age became a detriment in the culture of the City organization and an easy target."). As "proof" that the policies were discriminatory, Plaintiff relies heavily on the fact that Human Resources has access to data that reveals identifying characteristics including gender, ethnicity and age. (Doc. 27 at 7). "[L]isting my age and ethnicity with application information in the City's HR Department shows a platform of discrimination." (Doc. 27 at 8). However, Plaintiff concedes that there are "many reasons that the City has to keep statistics on gender and race." (Doc. 25 at 49-50).

### C. Review of Specific Promotions for Which Plaintiff Applied

#### 1. Positions for Which Plaintiff Did Not Meet Minimum Qualifications

Of the positions for which Plaintiff actually applied during the relevant period, at least five applications were rejected or failed based upon a failure to meet minimum qualifications/eligible classification. (Doc. 25-2, Ex. B). A sixth application appears to have been rejected because the job posting was canceled and not filled by anyone. (Doc. 25 at 162).

Plaintiff admits that many of the rejections were based on non-discriminatory factors, such as a rejection of a transfer because Plaintiff's "current classification is less than that of transfer classification." (Doc. 25 at 159-160). Other than referencing pre-November 2015 disputes about her classification status, Plaintiff offers no evidence to

14

refute the City's denial of various applications based on a failure to meet minimum qualifications. Thus, she has failed to produce relevant evidence that the rejection of five applications was in any way based on her race or age: (1) March 14, 2018 (Senior Admin. Specialist (noncompetitive)); (2) May 24, 2016 (Supervising Management Analyst (Procurement)); (3) May 16, 2016 (MA-Budget/Management Analyst (non-competitive)); (4) May 16, 2016 (Internal Auditor (non-competitive)); and (5) December 29, 2015 (Admin Specialist (transfer)). (*See, e.g.*, Doc. 25-2; Doc. 25 at 102-103,106-108, testifying that rejection of "transfer" application for Admin Specialist position was based on fact that Plaintiff was not classified as an Admin Specialist and therefore ineligible for "transfer," and that she does not have evidence that race or gender played any role). Plaintiff has also failed to prove any claim exists for a sixth application rejected based upon the cancelation of the job posting.

Plaintiff testified that a classification rule applied to eliminate her applications was not applied in the same fashion to Brandi Sanders, on one occasion. However, because Ms. Sanders applied for an entirely different position and Plaintiff admittedly did not know her qualifications, (Doc. 25 at 161-162), Plaintiff has failed to prove that Ms. Sanders was "similarly situated."

### 2. Failure to Identify Similarly Situated Individuals for Other Applications

### i. General Failure to Identify Winning Candidates

As Defendant points out, Plaintiff cannot establish her prima facie case because she identifies no similarly situated individuals outside of her protected class who were awarded positions for which Plaintiff herself was qualified. For example, on December 10 and again on December 28, 2015, Plaintiff submitted applications for Admin Specialist,

communicator. The disposition of both applications referred to "minimum qualifications." Plaintiff did not obtain either promotion, but has no evidence that race or age played a role. (Doc. 25 at 94-96, 98, 101). On April 11, 2016, Plaintiff applied for another Admin Specialist position for which her application was "referred" with other qualified applicants. Although she did not obtain the position, she again testified she had no evidence that illegal discrimination played a role other than her belief that HR considers accessible data concerning the race and age of applicants. At the same time, she did not know who was awarded the position, and has no information concerning the successful applicant's race or age. (Doc. 25 at 110).

When asked specifically whether she could point to any similarly situated employee who was treated more favorably because of age or race, Plaintiff consistently was unable to point to any evidence that would suggest bias. (Doc. 25 at 179-181, failing to identify anyone in the position of supervising management analyst who was treated more favorably because of their age or race), *id.* at 182 (Plaintiff's admission that she applied for only one supervising management analyst position during the relevant time frame, which she believed was awarded to a Caucasian female). For the vast majority of all positions to which she applied, Plaintiff testified that she did not know who was awarded the positions and has no evidence other than her subjective belief or speculation. (Doc. 25 at 112, 113, 118, 120-121, 123-124, 127-128, 140-142, 144, 148). During her deposition, Plaintiff would repeatedly assert that "I *think* they looked at my age, yes," but could offer no evidence but for her own failure to obtain the promotion. (*Id.* at 232, "I never heard from them. So I *assume* that they --- I was not in the competition. They weren't going to consider me.") (emphasis added).

16

Under *McDonnell Douglas*, Plaintiff was required to show background circumstances that suggest the City is that unusual employer that discriminates against the majority (Caucasian) race for her reverse discrimination claim. In addition, for both the reverse-race discrimination and age discrimination claims, Plaintiff was required show that a similarly situated employee was treated more favorably. In the absence of any indication about who was selected for the positions for which Plaintiff applied, Plaintiff's hypothesis that similarly situated employees were treated more favorably based on impermissible considerations of race and age is insufficient to prove her case.

### ii. Identified Candidates Not Similarly Situated

Reviewing Plaintiff's memorandum in opposition to judgment, her exhibits and deposition testimony, the undersigned finds only two positions (other than the position that Ms. Bruns was awarded) for which Plaintiff offered *any* testimony about the candidate who was selected over Plaintiff. In support of her ADEA claims, Plaintiff alleged that both positions were filled by younger Caucasian candidates. However, the record fails to yield any genuine issue of fact as to whether the selected candidate was similarly situated, and/or selected over Plaintiff based upon discriminatory animus toward Plaintiff's age.

For example, Plaintiff testified about a supervising management analyst position for which she applied on December 6, 2017 and for which her application was referred. (Doc. 25 at 129-130). Plaintiff admitted that the position of supervising management analyst and some other positions for which she applied would have amounted to a "fairly substantial promotion," several steps above her classification, and that such large promotional jumps do not "normally" happen despite being theoretically possible. (Doc. 25 at 125, 127). She initially testified that the position in the Police Department was

awarded to Diane Bookwaiter, identified as "[w]hite, older. Not as old as me. Ten years younger than me." (*Id.* at 130).[9]   However, she later clarified that it was not Ms. Bookwaiter after all but instead was Bruce Ross, a younger white male who was a senior human resource manager at the time, who received the promotion. (*Id.* at 114, 132, 135-136). Other than the fact that Mr. Ross was born in 1982, Plaintiff has no evidence that age played a role in her non-selection. (Doc. 25 at 136). The position held by Mr. Ross prior to promotion was higher than Plaintiff's position, but she did not otherwise know Mr. Ross's education, background or qualifications, (*id.* at 138). Plaintiff's testimony that she "could have fit well" in the position had she been selected, (Doc. 25 at 139), fails to prove that Mr. Ross was similarly situated.

A second position for which Plaintiff identified a successful candidate was listed as Admin Specialist for which "SME [subject matter expert] review" was required. Plaintiff could not recall if the job required skills in data analytics, and agreed that race played no role in the selection of the winning candidate, Leigh Tami. She again asserted that age played a role based on her perception that Ms. Tami is younger. Again however, Plaintiff had no knowledge of Ms. Tami's qualifications and did not dispute defense counsel's representation that she possesses a law degree. (Doc. 25 at 140-142).[10]   In other words, like the position awarded to Mr. Ross, Plaintiff offered nothing but her own speculation that she was similarly situated to Ms. Tami, or that age played any role in Plaintiff's non-selection.

---

[9] Based on Plaintiff's age at the time, Ms. Bookwaiter would have been 56 years old, which is within the same protected age classification as Plaintiff herself under the ADEA.

[10] Plaintiff's testimony as to whether Ms. Tami was awarded that promotion or some other position was equivocal. (*See* Doc. 25 at 143).

### iii. Lorryn Bruns Not Similarly Situated

In addition to the applications actually submitted by Plaintiff, she bases one "failure to promote" claim based upon the City's refusal to permit her to apply for the position of Senior Admin Specialist in her department, DOTE. It is undisputed that Lorryn Bruns received a temporary promotion to that position in July 2016 and was permanently promoted to the position on February 26, 2017. (*Id.* at 224, citing Doc. 25-4). Plaintiff also complains that after Ms. Bruns was promoted, her prior position of Administrative Specialist was left unfilled rather than posted so that eligible employees, such as Plaintiff, could apply. (Tr. 27 at 6; *see also* Doc. 25 at 207). However, a failure to post a vacant position does not indicate race and age discrimination against Plaintiff.

Plaintiff testified that Ms. Bruns is a Caucasian woman "15 years" younger than Plaintiff.[11] (Doc. 25 at 187). When Ms. Bruns first was given the temporary promotion to Senior Admin Specialist, Plaintiff complained that the temporary assignment should be rotated among other department employees.[12] Her supervisor, Nick Sunyak, responded favorably in part by agreeing that the Senior Admin Specialist position should be temporarily rotated among interested employees who were already classified as Admin Specialists, including Ms. Bruns. (Doc. 25 at 199, Doc. 25-1 at 23, expressing intent to "first offer the rotation to Administrative Specialists" after determining interest, and then providing existing Admin Specialists with "necessary training prior to their rotation period";

---

[11] Plaintiff was 65 years old in July 2016, which according to Plaintiff's testimony would have made Ms. Bruns age 50 at the time of promotion. The undersigned assumes for the purpose of the pending motion that the age difference is sufficient to state a claim under the ADEA; the City does not argue otherwise.

[12] Plaintiff testified that an Admin Specialist identified as an African-American female named Kimberly Jackson also was unaware of the temporary opening until informed by Plaintiff. (Doc. 25 at 186-187). Plaintiff asserts that Ms. Jackson also was never placed into the rotation for temporary promotion, because that rotation never occurred. Instead, after staying in the temporary placement for 7 months, Ms. Bruns was awarded the permanent position. (*Id.* at 201, 225-226). Considering Ms. Jackson's race and Ms. Bruns' race, this testimony undermines rather than supports Plaintiff's claim of reverse race discrimination.

*see also* Doc. 25-1 at 23). In an email response on which Michael Moore and Don Gindling were copied, Mr. Sunyak explained that Plaintiff would not be included in the rotation based on her lower classification, based on the "consensus" of DOTE "that Administrative Technicians [are] not eligible for the temporary transfer. This is a temporary promotion of 2 grades." (*Id.*) Mr. Sunyak further explained that in addition to the group of eligible Admin Specialists who might rotate through the temporary position, there were nine Admin Techs, which "would add years to the rotation, would also entail extensive training on the various human resource systems, interfere with current operations, and interrupt current duties." (*Id.*)

After learning that she would not be considered for the rotation based on her lower classification, Plaintiff expressed her long-standing frustration with her promotional opportunities and her belief that her superior qualifications had not been fairly considered via email:

> I just spoke with Don and he relayed to me your comment about me not being qualified for the position of a Senior Admin. Specialist for the rotation. I am not the least bit surprised by your vindictive response as this is how you have always treated me for the last 14 years. As you know, I was on the supervising management analyst eligible list a couple of years ago (Dianne Bookwalter received the promotion in CPD), which is above a senior admin. specialist. … I've had more responsibility in CPD and City Manager's office than the other admin. Specialists who are deemed eligible and I have two degrees with one in public administration. There is no longer an eligibility list for the senior admin. specialist. I am eligible and required to be included in the rotation.

(Doc 25-5 at 2). Denying Plaintiff's accusation that the decision not to include her in the rotation was "vindictive," Mr. Sunyak's response reiterated that the decision "was made for efficiency in operations." (Doc. 25-1 at 23)

Plaintiff concedes that Ms. Bruns and other Admin Specialists held positions one step below the Senior Admin Specialist promotion, and that the Admin Tech position held by Plaintiff is two steps lower. (Doc. 25 at 188). Ms. Bruns had worked as an Admin Specialist since 2007 prior to being promoted. Plaintiff further admits that the position of Senior Admin Specialist requires "two years of experience at administrative specialist or higher" – a qualification that Plaintiff did not possess "officially," notwithstanding her belief that she had performed equivalent work. (Doc. 25 at 190-191). Nevertheless, Plaintiff complains that Ms. Bruns did not have a bachelor's degree. She testified to her belief that the City chose Ms. Bruns based on her younger age. (*Id.* at 191). When asked for evidence, Plaintiff responded, "[y]ou would have to ask them," and could offer only "that's what I would get from it." (*Id.*) The only other explanation Plaintiff offered was that Mr. Sunyak, bore a personal "grudge" against her based upon a decade-earlier dispute over her classification, which dispute Plaintiff attributed to racial bias.[13] (*Id.* at 192; *see also id.* at 191 "Nick did not want me to get the job because we had other things. I had other problems with him."). However, Plaintiff testified she was unsure whether it was Michael Moore rather than Mr. Sunyak who promoted Ms. Bruns. (*Id.* at 194). Plaintiff had no issues with Mr. Moore, but believed "he was a friend of Lorryn [Bruns]." (*Id.* at 194).

Based on the record presented, the City is entitled to judgment because Plaintiff has failed to prove that Ms. Bruns was similarly situated in all respects. Unlike Plaintiff, Ms. Bruns had been working as an Admin Specialist for years, and thereafter gained

---

[13] Plaintiff does not explain how Mr. Sunyak's alleged racial bias a decade earlier would relate to age-related discrimination in the selection of Ms. Bruns in 2016. During the 2006 dispute, Plaintiff alleges that Mr. Sunyak provided false information regarding her duties, leading to an incorrect classification. Other than that dispute, the undersigned finds no need to recount other complaints or disputes that arose during Plaintiff's employment because they do not appear pertinent to the scope and time frame of the issues presented in this case. (*But c.f.* 23 at 3-4).

seven months of experience as a temporary Senior Admin. Specialist prior to her permanent selection for that position.  As discussed below, even if a reviewing court were to find that Plaintiff has submitted sufficient evidence to prove her prima facie case (contrary to the conclusion of the undersigned), the undersigned alternatively would recommend that judgment be granted in favor of the City based upon Plaintiff's failure to show that the Defendant's articulated reasons for its decision were pretextual.

### D.   Alleged Bias in Promotional Test and 2016-2017 Eligibility List

An undefined number of the applications that Plaintiff submitted for the position of Admin Specialist between June 2016 and July 2017 were rejected based upon Plaintiff's position on an eligibility list of qualified applicants.  Plaintiff placed 46th out of 63 eligible candidates on that list due to her poor test performance.  Plaintiff testified that, other than employees within the same department in which the Admin Specialist opening occurs, only the top three on the list are typically "certified" for promotion.  (Doc. 25 at 77-78; *see also id* at 177, agreeing she was not certified based on her poor placement among those who took the test).

Plaintiff believes that the inclusion of an oral interview on the test was unfair, and did not recall an interview being used prior to 2016.  (Doc. 25 at 69-70).  Despite being "great at interviews," Plaintiff admitted that she "almost failed" the referenced interview, contributing to her poor placement. (Doc. 25 at 59-60, 166).  Plaintiff testified to her belief that "HR included that oral interview to have more control over who gets promoted," as a pretext for discrimination.  (Doc. 25 at 82; *see also id.* at 88 "I think they did that oral interview to control the outcome of the eligibility list.").  In Plaintiff's opinion, the oral interview was "unnecessary" and should not have been permitted under a civil service

rule that provides for the inclusion of a structured oral interview "under the supervision of the civil service staff in examinations where a written test is… insufficient." (Doc. 25 at 69-70). However, Plaintiff has no knowledge or evidence that the Civil Service Commission did not approve the use of the structured oral interview in accordance with applicable civil service rules. (Doc. 25 at 74-75). In short, Plaintiff offers no evidence to support her subjective belief that the oral interview was added as a pretext for discrimination.

Notably, the record fails to support an inference of discrimination. Plaintiff testified that multiple 3-person interview panels were employed at six different locations over a two or three day period, and that all panels asked approximately 75 applicants the exact same five questions. (Doc. 25 at 84, 165-166). Plaintiff believed her own interview panel may have been biased based upon its compositional makeup of one "older" Caucasian female and two "young black girls." (Doc. 25 at 60). She further testified to her subjective belief that "interpretation, and looks, an older white woman – I think that played a hand in how they responded to my answers." (Doc. 25 at 86-87). However, she conceded that the panel did not use racial slurs or make any other comments to suggest bias during the brief five-question interview. Instead, without articulating any basis for her belief, Plaintiff testified that their "attitude" was biased. (Doc. 25 at 166).

Plaintiff also testified that a lack of transparency in grading made it impossible for her to rule out bias. (*Id.* at 167). However, it is Plaintiff's burden to produce evidence of bias; the Defendant is not required to disprove a legal theory for which Plaintiff has produced <u>no</u> evidence. Ironically, Plaintiff also explicitly denied that those scoring the test gave applicants lower scores based on age or race.

Q: But as far as that, as far as your age and your race, how did those come into play?

A. For this test, none.

(Doc. 25 at 92; *see also id.* at 87).

### E. Lack of Showing of Pretext

On the record presented, there is no need to consider pretext because Plaintiff has failed to prove her prima facie case. However, to the extent that any reviewing court would find that Plaintiff has made out a prima facie case of race discrimination, the undersigned finds undisputed evidence of legitimate, non-discriminatory reasons for the alleged failure to promote, and no evidence of pretext.

Under *McDonnell Douglas,* if an employer puts forth evidence of a legitimate, nondiscriminatory reason for its action, the plaintiff must show that the reasons given were not the true reasons, but were instead a pretext for discrimination. The "ultimate burden of proving ... the intent to discriminate" remains with the plaintiff at all times. *Wright v. Murray Guard, Inc.,* 455 F.3d 702, 707 (6th Cir.2006) (citing *St. Mary's Honor Ctr. v. Hicks,* 509 U.S. 502, 511, 113 S.Ct. 2742 (1993)). "A plaintiff can refute the legitimate, nondiscriminatory reason that an employer offers to justify an adverse employment action 'by showing that the proffered reason (1) has no basis in fact, (2) did not actually motivate the defendant's challenged conduct, or (3) was insufficient to warrant the challenged conduct.'" *Wexler v. White's Fine Furniture,* 317 F.3d 564, 576–577 (6th Cir. 2003) (additional citation omitted). Plaintiff's disagreement with her employer's policies and decisions does not mean that Defendant's reasons lacked a basis in fact. *See, e.g.,*

*Wright v. Murray Guard, Inc.*, 455 F.3d at 709 (affirming the district court's dismissal of a race discrimination claim).

## V.    Conclusion and Recommendation

Accordingly, for the reasons stated, **IT IS RECOMMENDED THAT** Defendant's motion for summary judgment be **GRANTED** as to all remaining claims, and that this case be closed.

 *s/ Stephanie K. Bowman*
Stephanie K. Bowman
United States Magistrate Judge

MARY JILL ALLGEYER                                    Case No. 1:16-cv-1128

        Plaintiff,                                    Barrett, J.
                                       Bowman, M.J.

   v.


CITY OF CINCINNATI, et al.,

        Defendants.

## NOTICE

Pursuant to Fed. R. Civ. P 72(b), any party may serve and file specific, written objections to this Report and Recommendation ("R&R") within **FOURTEEN (14) DAYS** of the filing date of this R&R.  That period may be extended further by the Court on timely motion by either side for an extension of time. All objections shall specify the portion(s) of the R&R objected to, and shall be accompanied by a memorandum of law in support of the objections. A party shall respond to an opponent's objections within **FOURTEEN (14) DAYS** after being served with a copy of those objections.  Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).